<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JULIO RODRIGUEZ, | Civil Action No. 14-3916 (SDW)(SCM) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | July 8, 2015 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Julio Rodriguez's ("Plaintiff") appeal of the final administrative decision of the Acting Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Norman Zamboni's ("ALJ" or "ALJ Zamboni") denial of Plaintiff's applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SI") under Title XVI of the Act.  Plaintiff, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeks review of the decision of the Commissioner denying Plaintiff's applications.

This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b).  This appeal is decided without oral argument pursuant to FED. R. CIV. P. 78.

For the reasons set forth in this Opinion, this Court finds that the Commissioner's decision is supported by substantial evidence and therefore must be **AFFIRMED**.

**I. PROCEDURAL AND FACTUAL HISTORY**

1

*A. Procedural History*

On October 12, 2010, Plaintiff filed an application for SSI under Title XVI of the Act. (Tr. 227-232.) On October 22, 2010, Plaintiff filed an application for DIB under Title II of the Act. (Tr. 220-226.) For both the SSI and DIB claims, Plaintiff alleged that the onset of disability date was February 1, 2009. (Tr. 220, 227.)

On March 3, 2011, Plaintiff's applications were denied. (Tr. 132-143.) On June 2, 2011, the applications were denied on reconsideration. (Tr. 146-150.) On June 21, 2011, Plaintiff requested a hearing by an ALJ. (Tr.154-156.) ALJ Zamboni held the hearing on May 4, 2012. (Tr. 51-76.) He denied the applications on August 14, 2012. (Tr. 31-50.) On October 12, 2012, Plaintiff timely requested review by the Appeals Council. (Tr. 25-27.) On April 22, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-8.)

Plaintiff appealed the Appeals Council's denial to this Court on June 18, 2014. (Dkt. No. 1.) Plaintiff submitted his brief in support on January 26, 2015 and Defendant filed her response on March 10, 2015. (Dkt. Nos. 9, 10.)

*B. Personal and Employment History*

Plaintiff was born on April 12, 1969. (Tr. 222.) Due to the fact that Plaintiff was 39 years old at the time of his alleged onset of disability date and 43 years old at the time of the ALJ's denial of his application, Plaintiff is defined as a "younger person" whose age does not affect his ability to adjust to other work. (Tr. 46, 118.); *see also* 20 C.F.R. §§ 404.1563(c), 416.963(c). Plaintiff's highest level of education is high school, from which he graduated in Peru. (Tr. 55.) Before the alleged onset of disability date, Plaintiff was a warehouse worker. (Tr. 56.) In that position, he loaded and unloaded fifty-to-eighty pound items onto and from trucks. (*Id.*) He has

also worked as a driver for Meals on Wheels, which did not involve heavy lifting. (Tr. 57.) Since his alleged onset of disability, Plaintiff alleges that he has not worked. (Tr. 446, 257-258.)

*C. Medical History and Hearing Testimony[1]*

From September 29, 2009 to January 21, 2012, Plaintiff underwent treatment with his primary care physician, Dr. Clementino Purisima, for the following conditions relevant to the disposition of this case: low back syndrome, myo-tendinitis in the lower back, degenerative disc disease, and intervertebral disc disorder with myelopathy in the lumbar region. (Tr. 532-539.) As a result, Plaintiff sometimes needed a cane to walk. (Tr. 403, 532, 533.) Dr. Purisima's prescribed methods of treatment have included: 1100 mg of naproxen sodium (an over-the-counter painkiller), ibuprofen, and diet and exercise. Plaintiff was also referred to a chiropractor. (Tr. 532, 534, 539.)

Plaintiff received medical evaluation separate from that of Dr. Purisima. On June 11, 2010, Dr. Nagesh Krish performed a neurological evaluation after Plaintiff complained of numbness and back pain while lifting his son. (Tr. 381.) After the evaluation, Dr. Krish recommended further imaging tests. (Tr. 383.) These tests confirmed degenerative disc disease at L5-S1 with a subligamentous disc protrusion noted centrally. (Tr. 374.) On December 1, 2010, Dr. Krish examined Plaintiff for pain in the lumbar spine, and found fallen arches (pes plannus deformity) and increased sensitivity (hyperesthesia) over the L3-L4 lumbar region. (Tr. 369-370.) Dr. Krish included in his diagnostic impressions the possibility of cauda equina syndrome, lumbar

---

[1] Plaintiff submitted evidence to the Appeals Council that was not in the record at the time of the ALJ's decision. (Tr. 549-553.) As a matter of law, it is impermissible to consider such evidence at this stage of review. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). Accordingly, such evidence has been excluded. Although Plaintiff could have requested that this Court consider remanding this case pursuant to sentence six of 42 U.S.C. § 405(g), Plaintiff did not do so. As a result, the claim is waived. *See Warren G. v. Cumberland County Sch. Dist.,* 190 F.3d 80, 84 (3d Cir. 1999) (waiver occurs when claim is not raised in opening brief). Even if Plaintiff had not waived the claim, the evidence presented is not "material" to his claim as required by sentence six of 42 U.S.C. § 405(g). Although his disability and supplemental security claim relates to a period ending April 14, 2012 (Tr. 46), Plaintiff's new evidence relates to a period in early 2013 (Tr. 552). The disconnect between the time periods establishes that Plaintiff's new evidence is immaterial to his claim. *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984).

stenosis, radiculopathy, and obstructive sleep apnea. (Tr. 370.) For treatment, he recommended exercise, weight loss, painkillers, an anti-depressant, and avoidance of "strenuous" activities.[2] (*Id.*)

On March 2, 2011, a state agency medical consultant physically examined Plaintiff to determine his physical residual functional capacity. Based on her review of the record, Dr. Yvonne Li found no limitations with respect to exertional capabilities, but found two postural limitations of the seven tested. (Tr. 86.) Among the postural limitations, Dr. Li concluded that Plaintiff could never climb ladders, ropes, or scaffolds and that Plaintiff frequently had difficulty bending at the waist. (*Id.*) Dr. Li also found that Plaintiff would have to avoid all exposure to hazards including machinery and heights. (Tr. 87.) Other than the above, Plaintiff purportedly had no manipulative, visual, communicative, or environmental limitations. (Tr. 87.)

On March 18, 2011, Plaintiff received two conflicting assessments from his primary care physician regarding Plaintiff's ability to perform work-related activities and Plaintiff's physical residual functional capacity. (Tr. 411-16, 417-21, 540-44.) With respect to Plaintiff's work-related activities ("initial assessment"), Dr. Purisima initially concluded that Plaintiff could stand or walk for 4 hours per day, sit without limitation, and lift or carry items weighing only 10 pounds or fewer. (Tr. 412, 415.) The ALJ, in consultation with the Medical-Vocational Guidelines, identified these facts as consistent with a sedentary level of work. (Tr. 44); 20 C.F.R. Part 404, Subpart P, App. 2. With respect to Plaintiff's physical residual functional capacity ("second assessment"), Dr. Purisima—singing a different tune—indicated that Plaintiff could sit for only

---

[2] Consistent with this interpretation, on February 29, 2011, Dr. Alexander Hoffman had physically examined Plaintiff for lower back complaints. (Tr. 403-405.) Noting that Plaintiff had never undergone physical therapy, Hoffman found that the pain was intermittent, treated with Ibuprofen, and not indicative of paralysis. (Tr. 403.) Plaintiff required no assistance walking and had no difficulty laying or rising on the examination table. (Tr. 404.) Reflexes and other tests indicated normalcy or moderate difficulties. (Tr. 404-405.) Dr. Hoffman also noted moderate obesity. (Tr. 404.)

4

four hours and stand for two hours in an eight-hour work day, could sit for only two hours and stand for only one hour at one time, could "rarely" lift items weighing twenty pounds, and would be absent from work more than four days per month. (Tr. 418-420, 542.) The ALJ later found that this second assessment, under the Medical-Vocational Guidelines, was consistent with *inability* to perform even a sedentary level of work. (Tr. 44.)

On February 17, 2011, a consultative psychological evaluation by Anthony J. Candela, Ph.D., found that Plaintiff self-identified as depressed. (Tr. 400, 401.) Plaintiff was taking Ativan for anxiety and anxiety with depressive symptoms, but found them only "somewhat" helpful. (Tr. 401.) Dr. Candela diagnosed him with depressive disorder related to his unemployment and lack of money. (Tr. 402.) Otherwise, Plaintiff demonstrated "clear, connected, and goal-directed" speech and "good" insight, judgment and reasoning. (Tr. 401.)

On March 1, 2011, a state agency psychological consultant, Dr. Ryan Mendoza, conducted a psychiatric review of Plaintiff. (Tr. 84-85, 96-97.) Plaintiff's affective disorders, according to Dr. Mendoza, were not of listing-level severity because they induced only moderate difficulties in social functioning, concentration and persistence. (Tr. 84, 96.) Dr. Mendoza noted insufficient evidence for paragraphs A, B and C criteria under the Listing of Impairments in 20 C.F.R. Part 404 Subpart P, App. 1.  20 C.F.R. §§ 416.920(d), 416.925, 416.926.[3] (Tr. 84, 97.) On the same date, Dr. Mendoza assessed Plaintiff's mental residual functional capacity. (Tr. 87-89, 100-102.) On the basis of the record, Dr. Mendoza made the following conclusions: Plaintiff had the capacity to understand and follow simple instructions, Plaintiff's ability to maintain concentration,

---

[3] On May 2, 2011, a second state agency psychological consultant, Dr. Alexander Golin, found a medically determinable impairment under paragraph A, but that this did "not precisely satisfy diagnostic criteria." (Tr. 111.) He concluded that there was insufficient evidence indicating a paragraph C listing, and only mild, moderate, or no evidence for a Paragraph B listing. (Tr. 127-128.)

persistence, or pace was sufficient for simple, routine tasks, Plaintiff could adapt in work-like settings, and Plaintiff's depression was "secondary to unemployment." (Tr. 102.)

At Plaintiff's hearing before the ALJ, Plaintiff's vocational expert ("VE") noted that Plaintiff's past work as a warehouse worker corresponded to unskilled, heavy exertional labor as those terms are defined under the Dictionary of Occupational Titles. (Tr. 70.) The ALJ asked the "VE" several hypotheticals to ascertain information about Plaintiff's ability to work. For his hypothetical inquiry, the ALJ assumed Plaintiff's age, education, work history, and residual functional capacity, and several other limitations that were in accord with Plaintiff's factual record.[4]

Asked whether such a hypothetical person could perform Plaintiff's past work as a warehouse worker, the VE said that Plaintiff could not. (Tr. 71.) Asked whether this hypothetical person could perform any other jobs in the national economy, the VE identified unskilled, light exertional jobs as a possibility. These jobs include parking lot attendant and cleaner. (Tr. 71-72.) Adding an additional constraint, the ALJ posited that the hypothetical person could only perform work at the sedentary level. (*Id.*) Asked the whether there were jobs in the national economy for such a person, the VE identified jobs in the unskilled, sedentary range. These jobs include ampoule sealer and final assembler. (*Id.*) Adding another constraint, the ALJ stated that the hypothetical person was limited to carrying five pounds and to sitting four hours per day. (Tr. 72.) Asked whether there were jobs for such a person, the VE responded that there were none. (*Id.*) The ALJ then changed the facts of the preceding constraint, indicating that the hypothetical person could sit for six hours per day, stand and walk two hours per day, and require a two hour break during the

---

[4] Included in the hypothetical limitations were Plaintiff's inability to utilize ladders, ropes, and scaffolds; his limitation to only occasionally crawling, crouching, and balancing; a proscription against using machinery; and a mental limitation confining him to simple, repetitive work tasks. (Tr. 71.)

6

day to rest and recover due to dizziness.  The VE stated that such a person could not obtain work.  (*Id.*)

During testimony before ALJ Zamboni, Plaintiff testified that he "really can't do too much" due to back-related pain that radiated down his right leg. (Tr. 58-59, 64.)  About twice a month, Plaintiff's back pain became so severe that he had to lie down for several hours. (Tr. 61.)  Plaintiff stated that his pain affected the duration over which he could sit, but that on a good day sitting relieved his pain. (Tr. 59-60.)  Plaintiff testified about difficulties walking (up to nine blocks) and standing for more than twenty minutes. (Tr. 61-62.)  Plaintiff noted, however, that use of painkillers usually removes his pain, unless he has one of the twice-a-month severe incidents. (Tr. 61, 67.)  With respect to his daily activities, Plaintiff testified that he played with his special-needs four-year-old child, helped him with homework, fed him, selected his clothing, and occasionally took him to the park.[5]  (Tr. 65, 68.)  He also testified that he was socially active, speaking with family and friends. (Tr. 68.)  Plaintiff said that he had some difficulty concentrating, but could do so if he was interested in the topic. (Tr. 64.)

**II. DISCUSSION**

*A.  Standard of Review*

This Court has Jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision.  42 U.S.C. § 405(g); *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate."  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).  Stated differently, substantial

---

[5] In a questionnaire dated January 6, 2011, Plaintiff stated that he attempts to clean the house but has to stop constantly due to pain.  Plaintiff stated that he goes out on a daily basis, during which he walks.  Plaintiff also stated that he prepared his own meals twice a week. (Tr. 267-268, 272.)

evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district courts' scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Fargonli v. Halter*, 247 F.3d 34, 35 (3d Cir. 2001)).

**B. The Five-Step Disability Test**

The Social Security Act gives the Social Security Agency authority to promulgate regulations that provide for the payment of a disabled child's insurance benefits if the claimant is 18 years old or older and has a disability that began before attaining the age of 22. 20 C.F.R. § 404.350. A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382.

An individual will be considered disabled under the Social Security Act ("Act") if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 432(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his ailment have been "established by medically accepted clinical or laboratory diagnostic techniques,

which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis to determine disability under the Act. *See* 20 C.F.R. § 404.1520; *see also Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479-80 (3d. Cir. 2007). Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"), which is defined as work that involves doing significant and productive physical or mental duties for pay or profit. *See* 20 C.F.R. §§ 404.1520(b). If the claimant engages in SGA, she is not disabled, for purposes of receiving social security benefits, regardless of the severity of his impairment(s). 20 C.F.R. § 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two. *Id.* § 416.920.

If the claimant establishes that she is not currently engaged in SGA, the ALJ then determines whether, under step two, the claimant suffers from a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. *Id.* § 416.921. If a severe impairment or severe combination of impairments is not found, the claimant is not disabled. If the ALJ finds a severe impairment or combination of impairments, she then proceeds to step three, where she must determine whether the claimant's impairment(s) is equal to or exceeds one of those included in the Listing of Impairments in 20 C.F.R. Part 404 Subpart P, App. 1. 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

Under step three, if an impairment or combination of impairments meets the statutory criteria of a listed impairment, as well as the duration requirement, the claimant is disabled, and entitled to benefits. *Id.* § 416.920(d). However, if the claimant's impairment(s) do not meet the severity of the listed impairment, or if the duration is not sufficient, the ALJ proceeds to the next step. *Id.* § 416.920(e).

Before undergoing the step four analysis, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *Id.* § 416.920(e). The ALJ considers all impairments in this analysis, not just those deemed severe. *Id.* §§ 404.1520, 416.920(e), 416.945; SSR 96-8p. After determining a claimant's RFC, the ALJ must determine, under the step four analysis, whether the claimant has the RFC to perform the requirements of his past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(f). If the claimant is able to perform his past relevant work (or alternatively does not have past relevant work), she will not be found disabled under the Act.

If the claimant is unable to resume his past work, the disability evaluation proceeds to the fifth and final step. At step five, the ALJ must determine whether the claimant is able to do any other work considering his RFC, age education, and work experience. *Id.* § 416.920(g). Unlike the first four steps of the analysis, where the claimant bears the burden of persuasion, if the claimant establishes that his impairment prevents him from performing any of his past work, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).

## C. Analysis

The ALJ, under Step Three, found that Plaintiff does not have the impairment or combination of impairments that meet or exceed the severity of the Listed Impairments in 20 C.F.R. Part 404 Subpart P, App. 1. 20 C.F.R. §§ 416.920(d), 416.925, 416.926. (Tr. 40.) ALJ Zamboni, under Step 5, also found that Plaintiff had the RFC to perform sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a), which exists in substantial numbers in the national economy. (Tr. 41, 45.) This Court finds that ALJ Zamboni's disability determination is supported by substantial evidence in the administrative record.

At Step One, ALJ Zamboni found that Plaintiff had not engaged in SGA since February 1, 2009, the alleged disability onset date. (Tr. 39.) At Step Two, the ALJ determined that Plaintiff suffers from severe impairments. (Tr. 39.) According to ALJ Zamboni, the following medically determinable impairments, either individually or in combination, significantly limit Plaintiff's ability to do one or more basic work activities: "degenerative disc disease of the lumbar spine; cauda equina syndrome; moderate obesity; and a depressive disorder." (*Id.*)

At Step Three, ALJ Zamboni found that Plaintiff's impairments or combination of impairments do not equal or exceed those in the Listing of Impairments in 20 C.F.R. Part 404 Subpart P, App. 1. 20 C.F.R. §§ 416.920(d), 416.925, 416.926. At this step, the ALJ is not required "to use particular language or adhere to a particular format in conducting [her] analysis." *Jones*, 364 F.3d at 505. As explained below, ALJ Zamboni's decision sufficiently considers the appropriate factors in reaching the conclusion that Plaintiff does not meet the requirements listed in 20 C.F.R. Part 404 Subpart P, App. 1. (*Id.*)

Plaintiff did not carry his burden of proving that his impairments or combination of impairments equal or exceed the listed impairments. (Tr. 40.) ALJ Zamboni cited Plaintiff's failure to establish the criteria for medical listing 1.02, which relates to major dysfunction of a

11

joint. (*Id.)*; *see* 20 C.F.R. Part 404, Subpart P, App. 1. That listing requires anatomical deformity, chronic joint pain, and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), bony destruction or ankyloses of the affected joint. (*Id.*) It also requires, under listings 1.00B2b and 1.00B2c, involvement of one major peripheral joint resulting in inability to perform fine and gross movements effectively or to ambulate effectively. (*Id.*) Under listing 1.04, the ALJ found insufficient evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. (*Id.*) The ALJ could point to substantial evidence in the record—which suggested low back syndrome, myo-tendinitis in the lower back, degenerative disc disease, and intervertebral disc disorder with myelopathy in the lumbar region—indicating that Plaintiff's afflictions did not meet or exceed the listings' above criteria. (Tr. 531-533, 538-39).

At Step Three, Plaintiff's mental impairments also fail to meet the requisite level of severity. As to Plaintiff's depressive disorder, the ALJ found that Plaintiff had not satisfied any of the four "paragraph B" criteria for listing 12.04. (Tr. 40.); *see* 20 C.F.R. Part 404, Subpart P, App. 1. First, Plaintiff had "mild" rather than the required "marked" restrictions on daily living activities. (*Id.*) The ALJ substantiated this finding by citing to testimony at the hearing in which Plaintiff testified that he could engage in daily living activities, such as caring for his son, in an appropriate manner. (Tr. 65, 68.) Second, Plaintiff also had "mild" rather than the required "marked" difficulties in maintaining social functioning. (Tr. 40.) For this finding, the ALJ cited Plaintiff's testimony to the court indicating that he can independently and appropriately interact. (Tr. 68.) Third, Plaintiff had "moderate" rather than the required "marked" difficulties maintaining concentration, persistence, or pace. (Tr. 41.) The ALJ pointed to Plaintiff's testimony indicating that Plaintiff could concentrate when interested and could take moderate seated breaks to relieve

pain. (Tr. 59-60, 64.) Fourth, no episodes of decompensations were present in the record for any extended duration. (*Id.*)

Contrary to Plaintiff's argument, the ALJ sufficiently considered Plaintiff's obesity. After reviewing the record, the ALJ determined that Plaintiff was moderately obese, which "in unison" with his other impairments made Plaintiff severely impaired under the Step One analysis. (Tr. 39.) As explained in the preceding discussion, however, ALJ Zamboni found that this combination of obesity and other afflictions did not meet or exceed the paragraph B criteria. (Tr. 41.)

Counter to Plaintiff's contentions, the ALJ sufficiently considered Plaintiff's medical record and provided explanations for discounting or relying on some of that evidence. (Tr. 43-44.) He specifically disagreed with certain state agency assessments indicating that Plaintiff could perform heavy work, pointing out that those assessments had not fully considered the evidence for Plaintiff's back pain. (Tr. 43.) The ALJ gave weight to Dr. Purisima's first residual functioning assessment that indicated that Plaintiff was capable of performing sedentary work. ALJ Zamboni properly discredited Dr. Purisima's second assessment indicating that Plaintiff was unable to perform sedentary work.[6] He did so because the second assessment cited to no specific findings or rationale for its conclusions. The second assessment also contradicted the first assessment—even though both assessments occurred on the same day. (Tr. 44.) The ALJ also highlighted that Plaintiff has not engaged in physical therapy or undergone steroid injections. This provides substantial evidence indicating that Plaintiff did not require the four to six breaks per day or four absences per month that Dr. Purisima's second assessment contemplated. (*Id.*)

Before undergoing the analysis under Step Four, 20 C.F.R. §§ 404.1520(e), 416.920(e), ALJ Zamboni determined that Plaintiff had the residual functional capacity to perform sedentary

---

[6] The ALJ is entitled to discount evidence so long as a reasonable explanation is provided. *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 617 (3d Cir. 2009) (citing *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981)).

13

work as defined in 20 CFR 404.1567(a) and 416.967(a). Plaintiff had the following exemptions afforded to him: "no climbing ladders, ropes or scaffolds; only occasional crawling, crouching and balancing; no work involving machinery; and mentally limited to simple routine work." (Tr. 41.) The ALJ pointed to Dr. Purisima's initial assessment, which stated that Plaintiff could stand or walk for 4 hours per day, sit without limitation, and lift or carry items weighing only 10 pounds or fewer. (Tr. 44, 412, 415.) He also cited the mental RFC assessments by the State agency, indicating that he can "perform simple routine work on a sustained basis." (Tr. 43, 84-85, 96-97, 401.) As such, this Court finds that ALJ Zamboni's RFC finding is supported by substantial evidence.[7]

At Step Four, the ALJ analyzed whether Plaintiff has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(f). Plaintiff's past relevant work as a warehouse worker was performed at more than a sedentary exertional level. As a result, the ALJ properly concluded that Plaintiff could no longer perform his past relevant work. (Tr. 44.)

At Step Five, ALJ Zamboni properly concluded that Plaintiff is capable of performing other SGA present in the national economy. (Tr. 21); *see also* 20 C.F.R. §§ 404.1569(a), 416.969(a). In reaching that decision, the ALJ consulted with the Medical-Vocational Guidelines for guidance about the range of sedentary jobs available to Plaintiff. 20 C.F.R. Part 404, Subpart P, App. 2. Due to the fact that Plaintiff had additional limitations,[8] the ALJ properly found that Plaintiff could not perform the full range of sedentary work. (Tr. 45.)

---

[7] Plaintiff claims that the ALJ's judgment is not supported by substantial evidence because ALJ Zamboni failed to cite or address some of the evidence in the record. (Dkt. No. 1, 17-20.) The ALJ, however, is not required to cite all evidence in the record and may overlook evidence that is "neither pertinent, relevant, nor probative." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2009); *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 747 (3d Cir. 2009).

[8] These include Plaintiff's inability to utilize ladders, ropes, and scaffolds; his limitation to only occasionally crawling, crouching, and balancing; a proscription against using machinery; and a mental limitation confining him to simple, repetitive work tasks. (Tr. 71.)

Plaintiff's VE found that an individual with Plaintiff's exertional RFC and additional limitations corresponded to two representative sedentary occupations that were available in the economy: [9] (1) ampoule sealer, with 21,912 nationally available positions and 761 positions in the New York-Northern New Jersey metro area; and (2) final assembler, with 28,518 nationally available positions and 704 positons in the New York-Northern New Jersey metro area. (*Id.*) As a result, the ALJ's conclusion that there was SGA in the national economy that Plaintiff could perform is supported by substantial evidence.

### III. CONCLUSION

Because this Court finds that the ALJ Zamboni's decision is supported by substantial evidence in the record, the Commissioner's disability determination is **AFFIRMED**. An appropriate order will follow.

                                                                      s/ *Susan D. Wigenton*
                                                                      **SUSAN D. WIGENTON**
                                                                       **UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc:    Magistrate Judge Steven C. Mannion
      Parties

---

[9] Although Plaintiff asserts that the hypotheticals posed by the ALJ to the VE contained factual inaccuracies, the VE testified that he was familiar with all of the evidence in the Plaintiff's record. (Tr. 70.) In particular, the relevant question asked was a general one composed of two parts: Plaintiff's factual history combined with a sedentary level of work. (Tr. 71.) The question was general enough that the VE, with his stated awareness of the record, could properly answer it.